Good morning, Your Honors. May it please the Court, Maura Udell on behalf of the appellant Michael Bondi. My client is with me here today. And this case is on review based on the trial court's erroneous grant of summary judgment on two motions for summary judgment filed by the defendants.  Now, the issue, the first issue we have here is the statute of limitations issue with respect to my client's claim as to NationStar. Now, the court found that the statute of limitations applied, the one-year statute of limitations applied because the injury, which was the basis of the action according to the court, was July of 2013. We believe there was record evidence to suggest that that was not the correct date, that actually the correct date was April of 2014. And the reason is as follows. The standard is the injury, which is the basis of the action. So what is the injury?  Or is the actual realization by the plaintiff in this case that he's been damaged or may be damaged? And that happened in April of 2014. What happened was my client had a second mortgage on a property. The first mortgage was defaulted. The second was defaulted.  The first loan was waived. Thereafter, my client had conversations with Bank of America, who was the original servicer on the loan for purposes of this case. There was actually a prior servicer, but let's assume it's Bank of America. Bank of America services the loan. They say, well, we have a second loan. We are going to waive that. And that's what Bank of America told my client. That's undisputed. That's what he's testified to. There's no dispute to that. So the question is, when the case and the file gets turned over to NationStar via a sale, NationStar, this actually, the original release, we'll call it, was 2009-2010. So from 2009 through 2010, nothing happens to my client with respect to his credit. It's not reported at all. Bank of America does not report the second mortgage at all. July, June of 2013, he receives a letter which says, we are transferring the servicing of this mortgage to NationStar. My client writes a letter to NationStar saying, hey, guys, this loan has been forgiven. It's been waived. They've not reported on it. Please investigate. So NationStar writes a letter to my client in September 2013 saying, we've investigated this. Bank of America, we've done a title search. The lien was released. There will be no further action on this file. There will be no further communications with the credit agency. That's September. January of 2014 comes around. My client communicates with NationStar. They again communicate with him and tell him specifically, no further action is going to be taken on this file. No further specific response to the credit agency is going to be taken on this file. And by the way, you should be getting a letter from our vendor, basically our captive vendor, Veripro, which says specifically, this file is closed. No further investigation will occur.  Lo and behold, April 2014 rolls around and my client reviews his credit and sees that this second mortgage has been reported as a charge-off, which is detrimental to him. It is that point in time we believe. It was reported as a charge-off. Charge-off. Well, isn't that accurate? I mean, it was forgiven. But there's a difference between a forgiven and a charge-off. A charge-off, and when they tell my client it's going to be a zero payment, that is much different for purposes of credit versus a charge-off. I got it. Okay. So that had the adverse effect on my client. So for purposes of what we're here today on, the statute of limitations, April is the operative date. If April is the operative date and the lawsuit was filed in July 2014, he's well within the one-year statute of limitations. The delayed discovery doctrine applies to all FDCPA claims. I don't think the defendants are going to dispute that at all. The issue is what is actually the injury. They're simply saying the letter is the injury, and my position is it's the last element of your cause of action which accrues, which is the damage. And our position is that accrued April of 2014. Therefore, specifically, the statute of limitations, as the trial court ruled, was erroneously applied. At a minimum, there's a question of fact as to that because that evidence was in the record. And if there's a question of fact, obviously, summary judgment was erroneously granted. So when did the harm occur, and what was the harm? The harm, according to us, is the statement to the credit agency of the charge-off. And what consequence did that have? What adverse consequence? That has a negative impact on his credit. That had a devastating impact on his credit. I understand that. But was there any circumstance in which his credit reading made a difference to him? I can have a good or bad credit reading out there, and if I'm paying cash for everything, it doesn't make a bit of difference to me. So did he apply for credit? Did his mortgage, was he turned down for a mortgage? What happened that gives us evidence of a specific and concrete adverse consequence? For purposes of adverse consequences, I don't think we had to actually prove that to overcome this motion for summary judgment. However, based on his testimony, he had difficulty getting credit. His credit was reduced from $90,000 borrowing to almost $30,000, which obviously he's going to have a problem with. It's going to have a problem that's going to affect his business. And is there evidence, and this may or may not be relevant, but is there evidence in the record that shows that he tried to obtain a loan in excess of what he was able to do under the new credit rating? I don't believe there's evidence in the record of that, Your Honor. But evidence based on his testimony regarding his ability to get credit, use credit cards. His credit cards were reduced. His ability to borrow was reduced. So that is obvious damage, possible damage. A jury should decide, notwithstanding the statutory damaged aspect of the FDCPA claim. At some point, the problem in the credit rating is fixed. At what point is it fixed? I don't believe it was fixed with respect to NationStar because NationStar did a deletion, which is correct. However, they again started to report as a charge-off, which was what the problem is. If they write a letter to Michael ---- So if he had filed suit shortly after he received the letter from NationStar, would the district court have had to have dismissed his suit? Which letter are you talking about, Your Honor? Well, he gets the letter in July of 2013. And that's what the district court said. That's what triggers the statute of limitations. Correct. So you knew at that point that they still thought this loan was live. And you say, well, he didn't really suffer any harm. There's no injury until April. So he can't be responsible because that's the last element in his suit. So what I'm asking is, if you had filed suit shortly after NationStar said, we've assumed responsibility for servicing this loan, would you have been thrown out of court? I don't believe so, Your Honor. I would concede that. If you wouldn't have been thrown out of court, then why doesn't that start ---- then why isn't that the correct date? Because the element of damage. He had no damage. He had no damage. Well, if he had no damage, then he would have no case, would he? So you would be thrown out of court. But you just told me that you don't think you'd be thrown out of court. I think you could make the argument that he had damage. You could say, well, I got this letter. Theoretically, I had statutory damage. But in reality, he's negotiating with them. He's saying, guys, this is wrong. He writes the letter back in July. He may be negotiating, but he's got a year from the time that he knows that he's been injured. Right. But if they think the loan is live and you think that you could have filed suit at that point and not been tossed out on a 12b-6, then you've got a live action and the statute ought to be running. Understood, Judge. But the issue was the issue is what is the injury? What is the violation? And the violation is ---- Right. You may have a lot more damages that you can prove come April. Correct. And you could have a violation. Maybe you had one in July. Maybe you had one in August. Maybe you had one in November. Those are all different elements, different actual causes of action. You could bring, if they're separate letters, separate statements by Nation Star saying, this is a charge-off. And meanwhile, they're writing him letters telling him, we are not going to report this. This is a zero balance. Are you barred from recovering any statutory damages that go from between June and April or July 2013 and April 2014? The statutory damages are a fixed amount. It's $1,000. It's not a calculation. So if there's a violation, there's statutory damage. But in order to maintain standing, I believe, and I think we can argue, you have to have some damage. I'm asking, are you barred from recovering any damages from anything from July of 2013 because it's outside the statute of limitations and it can only collect from April of 2014? I would agree that if our claim starts April, that is when it starts. And the damages which flow from April forward, what they were, that's when it starts. Do you have an ongoing cause of action every time they send a letter so you can just continue this thing in perpetuity? If they keep sending false letters, yes, that's the point of the FDCPA statute, which is to stop sending false letters to or false information, misidentifying the debt, because the whole point is and the information is and the testimony is that they waived this debt. They waived the loan. So I'm just trying to figure out the implications of your argument. So if he loses the credit, he realizes his credit is shot as of April of 2014, and NationStar continues to send him letters, he can file suit years later, even though he's suffered tangible damage as of April of 2014. As to each specific letter, I think you'd have to show that this is the letter, this is the damage, this is when it accrued. In this instance, it accrued when the first time he checked his credit. The first time he checked his credit, because remember, the statements and the letters between him and NationStar were, we are not going to report this. September, we're not going to report this. January, we're not going to report this. Then they write a specific letter from their servicer, their subservicer, VeraPro, telling him, we are not going to report this, this is a closed account, thank you, and then April, lo and behold, it happens. So I think for purposes of this case, statute of limitations clearly was misapplied, and on this issue, with respect to a motion for summary judgment, clearly there was evidence in the record to suggest the jury should determine whether it is actually July or April, not simply the court basically discounting. What are you asking the jury to determine? I believe the jury has to determine that defense. The jury decides that defense, not the court, because it's a question of fact as to when it applies. Okay. You've got three minutes left. Let's have you save it here on the other side, and then we'll hear from you again. Thank you, Your Honor. Good morning, Your Honors. Natalie Winslow for NationStar Mortgage LLC. I will be arguing for NationStar for eight minutes, and my colleague, Mr. Ayers, will be arguing for Bank of America for seven minutes. The FDCPA claim against NationStar Mortgage LLC is time-barred, initially because the complaint, the claim that was filed against NationStar Mortgage LLC, was filed through the first amended complaint on September 16, 2015. Mr. Bondi knew his claim was against NationStar Mortgage LLC as of mid-2013, based upon the communications between NationStar Mortgage LLC, Bank of America, and Mr. Bondi during that time frame, including a communication from Mr. Bondi on July 8, 2013, where Mr. Bondi threatened legal action against NationStar Mortgage LLC. The initial complaint was against NationStar Mortgage Holdings, Inc. That was filed on July 25, 2014. What Mr. Bondi argued before the district court is that relation back applied to the amended complaint because there was a mistake as to identity. But here there was no mistake as to identity, and this court looked at that requirement under Rule 15C in the Louisiana Pacific v. Asarco case. And what the Ninth Circuit said in that case was, in that case the defendant who had filed a third-party complaint had not made a mistake. It knew who the parties were and made a mistake as to who it determined it wanted to sue. The same rationale applies here. Based on the communications between Mr. Bondi and NationStar Mortgage LLC in 2013, Mr. Bondi knew that his claim was against the LLC, not NationStar Mortgage Holdings, Inc. So it is the September 16, 2015 date that we look at to see whether the claim was time barred. That's going to be just fine, right? Let's see, July, September 2015? So you're claiming that that would be late even as to the April 2014 time? That's exactly right, Your Honor. Even if you are looking at the date that Mr. Bondi says he was damaged through the credit reporting in April of 2014, you're still more than a year out with the September 16, 2015 date. But even if you're looking at the date of the original complaint, July 25, 2014, the date of the violation occurred here at the time of the service transfer, and that occurred on July 16, 2013. What Mr. Bondi argues is that the statute of limitations begins to run as of the date he discovered damages. But that's not what this Court said in the Mangum case, where it evaluated the discovery rule and said the statute of limitations begins to run as of the date plaintiff knows about the injury, knows of the injury or has reason to know about the injury. And here that occurred, as I said, at the time of the service transfer. There's also a substantive reason why NationStar is not liable under the FDCPA, and that is because at no point in time did NationStar Mortgage LLC engage in any sort of debt collection activity for this account. They were — they had — they sent out letters from Veripro, which says we're part of NationStar. Your Honor, there were letters that were sent out by Veripro. That is correct. But Veripro is not NationStar Mortgage LLC. What Mr. Bondi argues — what Mr. Bondi argued in opposition to summary judgment was that Veripro was a subsidiary to NationStar and NationStar was engaged in collection activities by using its subsidiary. But the general rule is that a parent is not liable for the acts of a subsidiary unless there's some sort of interdependence between the parties such that they are a single economic enterprise. Here there is no evidence in the record of a single economic enterprise. And Mr. Bondi sets forth no basis to deviate from the general rule and hold NationStar liable for Veripro's actions. Even if the Court were to look at the two letters from Veripro, there was one that was sent in December — on December 23, 2013, one that was sent less than a month later. And Veripro informed Mr. Bondi at that time that the account had been referred for collection activities, but it also gave Mr. Bondi the opportunity to dispute the debt, which Mr. Bondi — And both of those letters down at the bottom say that Veripro is a NationStar Mortgage LLC company. That's right, Your Honor. But NationStar Mortgage is not Veripro. And if you look, Your Honor, at the Veripro letters, they have a different address, they have a different phone number than NationStar Mortgage LLC's letters. And those are relevant factors when determining whether two companies constitute a single economic enterprise. You don't have that sort of evidence here. You have one line at the bottom of a Veripro letter that says that Veripro is a NationStar company. On appeal, Mr. Bondi argues for the first time that it can show debt collection activity through Mr. Bondi's testimony. He argues that in his reply brief. It wasn't argued on summary judgment, so it shouldn't be considered. But even looking at Mr. Bondi's testimony that he cites in his reply brief, it doesn't show that NationStar Mortgage LLC ever engaged in debt collection activity. And for its part, during the district court action, NationStar was deposed and said that it never engaged in debt collection activities for this account. And that testimony is corroborated by the fact that there is no letter or other evidence produced at summary judgment from NationStar that NationStar was at any point in time attempting to collect a debt. Turning to the FCRA claim, the only issue of fact raised by Mr. Bondi in opposition to summary judgment on this claim before the district court was that there was an issue of fact as to whether Bank of America forgave the debt prior to the transfer to NationStar. Now, that assertion, even if it is true, does not establish that NationStar is liable under the FDCPA. I'm sorry, under the FCRA. The assertion also is just simply not true. Bank of America did not forgive the loan. The only evidence that Mr. Bondi points to to support that conclusion is Mr. Bondi's own testimony at deposition. His testimony violates the best evidence rule because we don't have the written communications where Bank of America allegedly forgave the debt. And the problem is compounded here when we look at the July 8, 2013 letter to NationStar where he informs NationStar when he's threatening legal action that he has a full release letter from Bank of America. That letter has never been produced in this case. But as the district court found, even his deposition testimony did not establish that Bank of America forgave the loan. What Mr. Bondi testified is that he interpreted certain communications between he and Bank of America as a full release of the loan and that he believed that the debt was forgiven. But his belief and interpretation is not sufficient to establish forgiveness, particularly when you look at the evidence that NationStar and Bank of America produced at summary judgment. We produced Bank of America's records that showed that the debt was active and owing in July of 2013 when Bank of America transferred the loan to NationStar. We produced the servicing notes showing the same thing. We produced payment histories. At bottom, it was not inaccurate. Excuse me. It was accurate that the loan was not forgiven. Therefore, there cannot be a FCRA — there cannot be a violation of the FCRA by NationStar. Unless Your Honor has any other questions, I'll yield to Mr. Ayers. Roberts. Thank you. Thank you. May it please the Court. My name is Mark Ayers, and I'm here for Bank of America. Absent any questions from the panel, I just want to clarify a few points about Mr. Bondi's FCRA claim against Bank of America, which he didn't have an opportunity to address in his opening. But that is the only claim at issue on appeal with regard to Bank of America here. Well, I have a question for Bank of America. Bank of America did not report Bondi's second loan to credit reporting agencies. NationStar also sent letters to Bondi indicating that Bondi's account had a zero balance. Isn't this some evidence that the Bank of America forgave the second loan? Speaking for Bank of America, I can't say that that's any evidence that there was an agreement between Bank of America and Mr. Bondi to forgive this second loan. Our records certainly don't show that as stated in the declaration attached to our own motion for summary judgment. At the record excerpts on pages 29 to 31, you can find Mr. Bondi's testimony about this that Bank of America agreed to forgive this second loan. But, again, he doesn't say that he has a document. He says essentially, well, I have some e-mails that I interpreted as forgiving a second loan. Is not reporting a loan different from loan forgiveness? I believe not reporting a loan, I don't know that there's anything in the record that really indicates the difference between these two things, but I believe that reporting a loan as not reported is just a way to say that. What does that mean? We're not reporting this, we're not going to send you dunning letters, but we might do so in the future? We just reserve our rights? I believe that that's right. That sort of suggests that the loan is inactive? I think that's probably a good way to look at it, but it in no way reflects that that is somehow gone, that the thousands of dollars there that are owed are just, you know, completely forgiven, but it's just not going to be reported. But taking a step back. Is there a business reason for that? I mean, is Bank of America hoping that the recession turns around and then they'll come back after Mr. Bondi and say, you know, it's good to see you again after five years, we hope you've been prosperous because now we want the payments on the loan? Your Honor, I really can't speak to that. The record doesn't indicate what those distinctions are or indicate any statement from anyone at Bank of America as to why it was reported in that way rather than anything else. There wasn't any deposition testimony taken by Mr. Bondi of any Bank of America employees saying, well, tell me what this means and so forth. At the end of the day, we have a procedural problem, right, from the outset. If you look at pages 25 to 28 of Mr. Bondi's brief, that's the only place, and I'm talking about his opening brief, where he mentions or asserts any error with regard to the summary judgment in favor of Bank of America on the FCRA claim. However, in that argument, and it represents about three pages of total text, there's not a word about what the district court actually held. The district court's actual holding was that this is an effect, not an effect, it's a, quote, an untimely effort to amend its pleadings by asserting this new theory of the FCRA that there was a notice of dispute sent from Equifax to Bank of America in September of 2014. There's no evidence whatsoever to demonstrate that, which I can address. But the more fundamental problem is, is that when it comes up on appeal to this Court, you won't find a single word in his brief addressing that rationale. This Court has well-established law that you can't raise a new theory of liability at the summary judgment stage. You can't effectively amend your complaint. And we cited those cases. On page 23 of our brief, the City of Lake Forest case, for example, was just directly on point, and you could have cited many other cases. And so this Court need not even address the argument because Mr. Bondi failed to address what the trial court actually and quite correctly held. But even going past that fatal procedural problem, there's just a few other things that should be clarified. On page 27 of Mr. Bondi's opening brief, what he does cite — oh, and by the way, it's not addressed in the reply brief either. Even after Bank of America said, hey, wait a minute, you didn't address the actual rationale of the district court, it's not addressed in the reply brief. Of course, it couldn't be raised in the reply brief the first time anyway, but I just want to make that point. But on page 27 of the opening brief, there are citations to the record excerpts of 76 to 81, some 2014 letters to Experian and TransUnion, where he's mentioning an alleged reporting problem by NationStar, a 2014 letter to Equifax, again raising an alleged reporting issue by NationStar. That's at the record excerpts at 97 to 99. And then some AUDs, what are called AUDs from Equifax, which were given in response to a subpoena to Equifax, that he claims shows the dispute submitted by Bondi. That's at the record excerpts at 83 to 84. The problem is, as we state in some detail on page 27 of our brief, those AUDs are not evidence of something going from Equifax to Bank of America, which is absolutely required under this Court's Gorman case and any number of other cases. It's also absolutely required in the Sung Tae case, which is mentioned by Bondi. But what that case actually makes very clear is you have to have notice of this indirect notice through a CRA to the data furnisher before any FCRA claim can be had. Okay. You're right up to the end of your time, if you'd like to sum up. Yes. We believe that both procedurally and substantively, this Court should affirm the summary judgment of the district court. Okay. Thank you very much. Do you know, you saved some time. Counsel, I would just like your response to the Bank of America's claim that you didn't raise the timeliness issue in your brief. I believe that the timeliness issue was raised with respect to whether there's a question of fact in the record, which we pointed to, which was the AUD reports. Because there's a report in the Equifax documents which say, spoke with Beverly Lassiter. She's an employee of Bank of America. So there has to be some transaction or some transmittal from Equifax to Bank of America in order to get that person's name. There has to be something. We don't have that. That's not in our purview, but there is evidence to suggest that there was a statement made. Thank you. I understand your answer. The other issue is, with respect to Veripro, if you read the letter at the bottom, it doesn't just say Veripro is a NationStar Mortgage Company. It says, Veripro Solutions, formerly known as NSM Recovery Services, Inc., is a NationStar Mortgage LLC company. Veripro is a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose. So for them to say that they weren't collecting a debt, I think, is a misnomer. And the other issue which they raise, which is the best evidence issue, they're saying, well, we don't have a release. You need to have a written release from Bank of America of this loan. We don't. We have evidence. Evidence is just not documents. Evidence is testimony. The statement from my client as to what Bank of America told him is evidence. The statement from my client to what NationStar told him is evidence. That is evidence which the jury should weigh. The court simply disregarded my client's statement and my client's testimony because he doesn't have a waiver, a written document from Bank of America, something he could not actually produce. What he did testify to was he received emails, secure emails, which he could not see, which was evidence of a waiver. The jury should decide that, not the court. And that's the reason we'd ask the court to reverse both orders.  Thank you. Thank you, Your Honor. Thank both sides for their arguments. Bondi v. NationStar Mortgage and Bank of America submitted for decision. The last case this morning, Henderson v. United Student Aid Funds.
judges: D.W. Nelson, W. Fletcher, Bybee